[Civ. No. 13781.   Second Dist., Div. Three.   Feb. 24, 1943.]

PATRICIA LOUISE STEVENS, a Minor, etc., Respondent, v. ROBERT LESLIE KELLEY, Appellant.

Sprague, Hunt & Sprague, Richard W. Sprague, Wm. M. Rains, Harrison Weil and William A. Sprague for Appellant.

Clifford W. Twombly, Francis D. Adams and A. J. O'Connor for Respondent.

SHINN, Acting P. J.—It is provided by section 196a of the Civil Code that ''The father as well as the mother, of an illegitimate child must give him support and education suitable to his circumstances. A civil suit to enforce such obligations may be maintained in behalf of a minor illegitimate child, by his mother or guardian, or by a guardian ad litem appointed upon the written application or with the consent of his mother; . . . ''

Invoking this statutory right, plaintiff Patricia Louise Stevens, by her guardian ad litem, brought the present action against Robert Leslie Kelley, alleging herself to be the child of defendant and Alyce B. Lewis Snyder, who were never married to each other, seeking judgment against defendant for her support and also fees for her counsel. The issue of paternity was submitted to a jury, which rendered a special verdict in plaintiff's favor. The court made findings covering the remaining issues and awarded plaintiff $125 per month and certain other support until her majority, and the further sum of $7,500 as attorney's fees. Defendant was ordered to give security for the payment of the support money in an amount to be fixed by the court; he appeals from the judgment.

By answer defendant pleaded a former adjudication as a defense to the action; the court held that the judgment rendered in the former action did not constitute a bar to the present one and that the issue of paternity was not res judicata. This finding presents the determinative question upon the appeal.

The former action was brought by plaintiff's mother, then Alyce B. Lewis. The complaint therein alleged that Robert Leslie Kelley was the father of Patricia, who was at the time of the institution of the suit three months and twenty days old; that the mother and defendant were not married to each other, and other facts showing the necessities of the child and the ability of defendant to support her. By the prayer of her complaint Alyce B. Lewis sought a judgment declaring that Patricia was the child of the defendant and herself and requiring defendant to pay for the child's support $250 per month or such sum as might be deemed proper. Defendant answered that complaint, denying its allegations generally and specifically; the case went to trial before the Superior Court of Los Angeles County on April 20, 1934, plaintiff Alyce B. Lewis appearing at the trial by her counsel (one of whom, incidentally, is now acting as counsel for plaintiff herein) and defendant appearing in person and by counsel. Upon the conclusion of the trial the court made and entered findings and judgment to the effect that defendant is not the father of Patricia and denying plaintiff any recovery upon her complaint. This judgment became final.

Prior to the trial of the present action, when the issue of paternity was submitted to a jury, certain other proceedings had been had therein. Some months before the jury trial, and before the same judge, the special defense of res judicata

had been tried under the provisions of section 597 of the Code of Civil Procedure, by which the court is given discretion to try issues raised by certain special defenses, among which is the defense of former adjudication, before trial of the remaining issues. Upon this preliminary trial defendant offered and there was received in evidence the judgment roll in the former action. Plaintiff herein then offered and there was received in evidence over objection of defendant a document reading as follows: "I, the undersigned, Alyce B. Lewis, do hereby retract all and singular, and each and every allegation of my complaint in the above entitled matter, the same having been verified by me on the 7th day of September, 1933, and filed in the office of the County Clerk of the above entitled Court on the 11th day of September, 1933, and I hereby consent and agree that this retraxit shall be a bar to the institution or prosecution of the said action or of any other action, against the defendant herein upon any of the issues contained within and pleaded in said action. This retraxit is intended to constitute and allow a permanent, irrevocable and final determination of the aforesaid action in favor of the defendant. In Witness Whereof, I have hereunto affixed my signature this 3d day of March, 1934. Alyce B. Lewis. Approved: Francis D. Adams (s) De Forrest Home (s) Attorneys for Alyce B. Lewis. [Here follows acknowledgment.]" Also an agreement reading as follows: "In the Superior Court of the State of California in and for the County of Los Angeles

"Alyce B. Lewis, Plaintiff, vs. Robert Leslie Kelley, Defendant. No. D 114985

## AGREEMENT

"We, the undersigned, and each of us, do hereby consent that the above entitled matter may proceed to trial, determination and judgment in our absence, but whether present or absent at the trial in the within action, we consent and stipulate that judgment may be made and entered in favor of the defendant, and hereby waive findings of fact and conclusions of law, and hereby further waive the right to move for a new trial and consent that if motion for new trial should be made following judgment in favor of the defendant, that said motion for new trial may be denied, and further hereby waive the right to appeal from a judgment in favor of the defendant, and consent that the judgment in favor of the defendant shall forthwith, upon the filing of this stipulation, be and become final.

"We, the undersigned, further state that the signature of Alyce B. Lewis, plaintiff, is made and given after consultation with and upon the advice of her counsel of record herein.

"Dated: March 3rd, 1934.

> Alyce B. Lewis (s)
> Alyce B. Lewis
> De Forrest Home (s)
> Francis D. Adams (s)
> Attorneys for Plaintiff.''

Defendant's objection which was overruled was upon the ground, among others, that the evidence was offered in support of a collateral attack upon the former judgment and that the court could not consider on such attack anything not contained in the judgment roll in the former action. Plaintiff herein then offered to prove that the sum of $2,500 had been paid by defendant to Alyce B. Lewis, plaintiff in the former action; defendant objected to the evidence upon the same grounds urged against the admission of the documentary evidence, which objection was overruled. Thereupon it was stipulated, defendant reserving his objection to the evidence, that the sum of $2,500 had been paid by defendant to said Alyce B. Lewis. At the conclusion of this hearing (as recited in the findings in the present action) a minute order was made reading as follows: "In this cause heretofore submitted July 2, 1940, the court now renders its decree and order as follows: Judgment for the plaintiff on the affirmative defense that this action is barred by a prior judgment (attorneys notified).'' Thereafter the court made a similar order following the reopening of the case for further evidence. Plaintiff made a motion to set the case for trial, which defendant opposed upon the ground that there had been no decision upon the special defense of res judicata; the objection was overruled and the case was set for trial.

Upon the trial before a jury defendant objected to the introduction of any testimony, upon the ground that no decision had been rendered by the court upon the special defense of res judicata, since no findings and conclusions had been signed and filed pursuant to section 632 of the Code of Civil Procedure, which objection was overruled. Following the taking of evidence before the jury on plaintiff's behalf upon the issues of paternity, the necessities of plaintiff and the ability of defendant to support her, no testimony upon these issues being introduced by defendant, the judgment roll in the former action was offered in evidence as first recited herein and plain-

tiff objected thereto upon the grounds that the judgment was one of compromise and therefore not admissible and that the court had so decided, which objection was sustained; defendant then moved for a directed verdict and following the rendition of the verdict moved for judgment notwithstanding the verdict, which motions were denied. The court made extensive findings, certain of which will be noticed in our discussion of the matters to which they relate.

We have concluded that the plea of former adjudication was sustained by the proof which was received upon the trial of that issue and that findings and judgment herein should have been in favor of defendant upon that defense.

Plaintiff, in her endeavor to defend the present judgment, advances two legal propositions, either of which, she contends, is sufficient for the purpose. The first is that plaintiff herein was not a party to the former action; the second one is that if she was a party to that action the judgment is not binding upon her because the case was compromised without the consent of the court in which it was tried.

The court found that plaintiff herein was not the real party in interest in the former action; this finding was in error. Section 196a of the Civil Code authorizes the mother of an illegitimate child to sue the father for the child's support. The authority of the mother to sue is equal to that of a guardian ad litem or a general guardian. The former action was brought on behalf of the child and she was the real party in interest. That the code section means exactly what it says has been held in *Gambetta* v. *Gambetta,* (1916) 30 Cal.App. 261 [157 P. 1141]; *Fernandez* v. *Aburrea,* (1919) 42 Cal.App. 131 [183 P. 366]; *McLain* v. *Meadows,* (1919) 44 Cal.App. 402 [186 P. 411]; *Mathews* v. *Hornbeck,* (1927) 80 Cal.App. 704 [252 P. 667]; and *Kyne* v. *Kyne,* (1940) 38 Cal.App.2d 122 [100 P.2d 806]. Plaintiff's rights, having been determined in an action in her behalf brought by her mother, cannot be again litigated in an action brought by her guardian ad litem. Section 196a is in harmony with section 369 of the Code of Civil Procedure, which provides that a person expressly authorized by statute may sue without joining with him the persons for whose benefit the action is prosecuted. It was not necessary that the child be named as a party plaintiff in the former action.

If the present judgment were allowed to stand, we would have two judgments of the same court, adjudicating

identical rights between the same parties in interest, the second the exact opposite of the first. Both cannot be valid. Where the defense of former adjudication was pleaded and the earlier of the judgments was established by sufficient proof, it had to prevail over the later judgment unless it was shown (1) to be void, (2) to have been effectually vacated or annulled, or (3) to have been obtained by fraud or other circumstances which would have rendered it vulnerable to attack upon equitable grounds.

Two rules of law bear upon the question of validity, namely, unless a judgment is void on its face it is not subject to collateral attack, and whether it is void on its face must be determined from a consideration of the judgment roll alone, extrinsic evidence being inadmissible. (*Kaufmann* v. *California Mining etc. Syn.*, (1940) 16 Cal.2d 90, 91 [104 P.2d 1038]; *Estate of Keet*, (1940) 15 Cal.2d 328, 333 [100 P.2d 1045]; *Security-First Nat. Bk.* v. *Superior Court*, (1934) 1 Cal.2d 749, 753 [37 P.2d 69]; *Feig* v. *Bank of Italy etc. Assn.*, (1933) 218 Cal. 54, 57 [21 P.2d 421]; *Capital Bond etc. Co.* v. *Hood*, (1933) 218 Cal. 729, 731 [24 P.2d 765]; *Sacramento etc. D. Dist.* v. *Superior Court*, (1925) 196 Cal. 414, 429-30 [238 P. 687]; *Crouch* v. *H. L. Miller & Co.*, (1915) 169 Cal. 341, 343 [146 P. 880]; *Brush* v. *Smith*, (1903) 141 Cal. 466, 469 [75 P. 55].) The foregoing rules apply to judgments in favor of or against minors. (*Joyce* v. *McAvoy*, (1866) 31 Cal. 273, 283 [89 Am.Dec. 172].)

The judgment roll is complete and it shows a judgment which is not void on its face.

The next question is as to the nature of plaintiff's attack upon the judgment. If it was a collateral attack, plaintiff's evidence, consisting of the retraxit, the agreement, and the fact that plaintiff's mother received $2,500 from defendant, was incompetent, since extrinsic evidence cannot be received to impeach a judgment upon a collateral attack. If it was a direct attack or, to be more exact, if it was an attack of such a nature that it was governed by the rules relating to direct attacks, extrinsic evidence was admissible to establish any facts which would furnish the basis for a decree vacating the judgment in an equitable action brought for that purpose. (15 Cal.Jur. 14; *Jeffords* v. *Young*, (1929) 98 Cal.App. 400, 404 [277 P. 163]; *Carpentier* v. *City of Oakland*, (1866) 30 Cal. 439, 443; *Spencer* v. *Vigneaux*, (1862) 20 Cal. 442, 449.)

We are of the opinion that under the pleadings plaintiff was in a position to make a direct attack upon the judgment

and that the extrinsic evidence offered by plaintiff would have been admissible in support of a direct attack. What plaintiff endeavored to do is another matter and remains for further discussion. We shall take up first the state of the pleadings to see what was in issue and whether plaintiff's attempted attack was collateral or direct. As stated in *Parsons* v. *Weis,* (1904) 144 Cal. 410 [77 P. 1007]; at 415: "When we speak of a direct attack upon the judgment we usually refer to some proceeding in the action in which it was rendered, either by a motion before the court which rendered it or an appeal therefrom, whereas an attempt to impeach the judgment of [by] matters *dehors* the record is a collateral attack. (See, also, *Eichhoff* v. *Eichhoff,* 107 Cal. 42 [40 P. 24, 48 Am.St.Rep. 110].) An attack upon a judgment on the ground that it was procured by fraud is a direct attack, since the establishment of the fraud shows that no judgment has been rendered." (See, also, *Lieberman* v. *Superior Court,* (1925) 72 Cal.App. 18, 35 [236 P. 570].)

There was no pleading on plaintiff's part which alleged facts which would invalidate the judgment, but that was unnecessary. Defendant in his answer set up the former judgment as a bar to the present action. Under section 462 of the Code of Civil Procedure all new matter in the answer was deemed to be controverted. That section has been given a liberal interpretation. In *Watson* v. *Poore,* (1941) 18 Cal.2d 302, 316 [115 P.2d 478], under similar circumstances, the plaintiff was allowed to prove that a deed relied upon as a defense to the action was procured by fraud; in *Feig* v. *Bank of Italy etc. Assn.,* (1933) 218 Cal. 54 [21 P.2d 421], the plaintiff was allowed to prove facts to overcome the effect of a judgment pleaded in the answer, the court saying (p. 57): "It is well settled that a plaintiff, without further pleading, may offer evidence, in avoidance of new matters set up in the answer or tending to overcome matters disclosed by the defendant's evidence admitted under the denials contained in the answer." In *Taylor* v. *Taylor,* (1923) 192 Cal. 71 [218 P. 756, 51 A.L.R. 1074], in an action for partition brought by the wife, the husband by answer pleaded a divorce decree rendered by a Nevada court as an estoppel to the action of the wife. The latter sought to avoid the effect of the decree by proof that it had been fraudulently obtained, under section 462 of the Code of Civil Procedure. The court there said (p. 81): "If a replication were permissible, plaintiff, by such a pleading, could

have set up the facts constituting the fraud alleged to have been committed by the defendant; but, under our system of pleading, a replication to the answer has no place. It is supplied by operation of law through the application of section 462 of the Code of Civil Procedure, which provides that the statement of any new matter in the answer, in avoidance or constituting a defense, must, on the trial, be deemed controverted by the opposite party. Ordinarily, when a cause of action or a defense rests upon fraud, the facts constituting the fraud must be pleaded. But the necessity of proving fraud may appear only after the answer of the defendant is in. In such case, a plaintiff may introduce on the trial evidence which countervails or overcomes any new matter as if it were inserted in a replication and pleaded with all the precision and fullness which the strictest rules of law require.'' Other cases to the same effect are collected in 21 Cal.Jur. 165. Plaintiff, without further pleading, was entitled to prove any facts which, under the rules of equity, would establish the invalidity of the judgment.

She attempted to show that the judgment was not binding upon her because it was entered upon the consent of her mother and that the mother had no authority to give such consent. This was in the nature of a direct attack. In support of this contention plaintiff relies upon section 372 of the Code of Civil Procedure and section 1431 of the Probate Code. At the time of the judgment the former section authorized a guardian or guardian ad litem of a minor to compromise actions for or against the minor with the consent of the court in which they were pending; the latter section authorized the father of a minor in some cases and the mother in others to compromise disputed claims of a minor for money against third persons, after filing a verified petition with and receiving the approval of the superior court of the county in which the minor resides.

There is no code section which specifically denies the mother of an illegitimate child authority to compromise claims of the child in an action for support brought by the mother on behalf of the child against the alleged father. She has no right to compromise her child's claim by agreement with the alleged father in the absence of a suit which, as we have seen, she has the right to bring and control. (*Fernandez* v. *Aburrea, supra,* 42 Cal.App. 131 [183 P. 366].) But whether the above code sections apply to such a suit need not be decided. At the outset of the inquiry upon this phase of the case we encounter

two findings in the present action which are destructive of this theory of invalidity. The first of these findings is that plaintiff was not the real party in interest in the former suit. Of course if this finding had been sustained by the evidence it would have been a complete answer to the contention that plaintiff's claim had been improperly compromised. Although maintaining stoutly that this finding was correct, plaintiff proceeds to ignore it and assumes facts to the contrary of the finding. The next finding reads as follows: " . . . there has never been executed by the mother of the plaintiff herein, or by any other person or persons, a compromise of any disputed claim, the property of this plaintiff . . . nor have any moneys allegedly received by any person upon any such disputed claim, the property of this plaintiff, or in compromise thereof, been paid or delivered to any person for or on behalf of this plaintiff." Plaintiff does not challenge this finding but ignores it altogether. For the purposes of this appeal we must give full effect to the finding. It necessarily follows that plaintiff's mother did not compromise plaintiff's claim for support in the former action and that there was nothing to be presented to the court for approval. Before the question we are discussing would appear for decision, the two findings we have mentioned would have to be the other way around.

The next possible theory which could have been developed under the pleadings is that the former judgment was the result of fraud perpetrated upon plaintiff by her mother. No such theory was advanced at the trial and it is not suggested here. We mention it only because it could have been made an issue under the pleadings if plaintiff had seen fit to do so and not because there was any evidence tending to show fraud. The presumption is that plaintiff's mother acted in good faith and it is significant that her motives have not been impugned. The finding that she did not compromise any claim of the plaintiff suggests that defendant may have been willing to pay $2,500 in order to obtain a judgment declaring that he is not the father of plaintiff and would not have been willing to pay any sum to or for the use of plaintiff under circumstances that would have admitted his paternity. The mother acted upon the advice of counsel, one of whom as we have stated now represents plaintiff. It is not at all surprising that no charge of actual fraud on the part of plaintiff's mother was made in the present action.

As the finding that plaintiff was not the real party in interest in the former action is contrary to the undisputed facts

and as the other findings we have discussed furnish no support for the conclusions of law, the judgment must be reversed.

Other points urged by appellant relating to alleged irregularities of procedure, to the allowance of counsel fees, and to the requirement for the giving of security require no attention.

The judgment is reversed.

Wood (Parker), J., and Shaw, J. pro tem., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 22, 1943. Curtis, J., Carter, J., and Traynor, J., voted for a hearing.